**UNITED STATES of America,
Appellant,**

v.

**Violet HICKOX et al., Appellees.**

**No. 22317.**

United States Court of Appeals
Fifth Circuit.

Feb. 25, 1966.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Joseph Kovner, Edward L. Rogers, Attys., Dept. of Justice, Washington, D. C., Donald H. Fraser, U. S. Atty., Savannah, Ga., Richard M. Roberts, Acting Asst. Atty. Gen., Washington, D. C., Richard C. Chadwick, Asst. U. S. Atty., of counsel, for appellant.

Leon A. Wilson, II, Waycross, Ga., for appellees.

Before BROWN and COLEMAN, Circuit Judges, and GARZA, District Judge.

GARZA, District Judge:

The Government brought suit below against Paul Hickox, the taxpayer, his sister, his wife and a bank, to reduce the taxpayer's excise tax liability to judgment and to set aside conveyances from the taxpayer to his sister and from his sister to his wife as fraudulent, and to establish the priority of the Government's lien.

The taxpayer failed to answer, and in two separate judgments by default, the Government obtained judgment against Paul Hickox for distilled spirits excise taxes and wholesale liquor dealer taxes totaling $3,180.48 for the period March 1, 1955, through March 31, 1957, and distilled spirits excise taxes totaling $6,227.42 for the period of January 21, 1960. Before bringing the suit, the Government had apparently discovered that Paul Hickox was insolvent, but that he had transferred a farm that he owned and on which the first "still" was located, to his sister who, in turn, had deeded the property to his wife, and, therefore, the Government had asked that these conveyances be set aside as fraudulent. The Appellee bank had made loans to the wife who, in turn, mortgaged the farm to the bank to secure payment of said loans. After the debt of Paul Hickox had been reduced to judgment, the Government proceeded to trial before the district court without the intervention of a jury, on the remaining phases of its original action.

After the Government rested, the defendants sister and wife, and the bank, made a motion to the Court for "directed verdict" which was granted by the court and judgment entered against the Government. From this action of the district court, the Government appealed.

The district court made no findings of fact or conclusions of law, but the record reveals that the witnesses called by the Government, and several documents introduced by the Government, showed the facts sought to be proved by the Government to be as follows:

Paul Hickox obtained from his father on August 8, 1942, a farm of approximately 182 acres on which there was situated a farm house, a tobacco barn and other outbuildings. Paul Hickox and his wife, Violet Hickox, at all times relevant here made their home on this farm. On November 28, 1956, a Government agent raided a still located on the farm close to the home of Paul Hickox and his wife, and seized liquor on which no tax had been paid. On November 12, 1957, Paul Hickox was indicted for these liquor violations and he was convicted of the charges on February 24, 1959. After indictment but before conviction, Paul Hickox conveyed his farm to his sister, Dorothy Hickox Metz, by warranty deed

to which no revenue stamps were attached. The deed recited that the conveyance was

"for and in consideration of the sum of Ten Dollars and other valuable considerations in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, * * *."

This deed was filed on the same day and recorded in the office of the Clerk, Superior Court, Charlton County, Georgia, on September 26, 1958.

On December 20, 1958, Paul Hickox went to the Appellee bank and borrowed $400.00 and conveyed to said bank the farm herein in controversy to secure the payment of the same. In the deed to the bank, Paul Hickox covenanted that the fee simple title to the farm was vested in him and that there were no liens of any nature against him. This note was paid in full on February 15, 1959.

On November 6, 1959, the District Director of Internal Revenue, Atlanta, Georgia, assessed against Paul Hickox distilled spirits excise taxes, wholesale liquor dealer taxes, penalty, and interest for the period March 1, 1955, through March 31, 1957, in the total amount of $2,711.72, representing unpaid tax of $2,-205.00 on 210 gallons of distilled spirits which were seized on November 28, 1956, the balance being the penalty and interest. On November 13, 1959, notice and demand to Paul Hickox was made by the Internal Revenue Service. The notice of the federal lien for these taxes was filed in the Clerk's office, Superior Court, Charlton County, on February 4, 1960.

On January 21, 1960, another still was seized and an additional 495 gallons of alcohol mash were seized on or near the farm of Paul Hickox. Paul Hickox later told the agent that the still was located just across the stream from his house, and that it was not actually on his property. At the time of the seizure, a tractor and homemade trailer which were owned by Paul Hickox and were being used in the still operation were also seized, and Paul Hickox was arrested at the time of the seizure. This seizure gave rise to the judgment for the $6,-227.42 mentioned above.

On April 9, 1960, after the raid on the second still and the arrest of Paul Hickox, his sister, Dorothy Hickox Metz, conveyed the farm in question to his wife, Violet Hickox, by warranty deed to which revenue stamps in the amount of $1.10 were attached and canceled. This deed was filed and recorded in the Clerk's office, Superior Court, Charlton County, on April 11, 1960.

On February 24, 1961, taxes were assessed on the second batch of liquor seized on January 21st, and notice and demand were made on Paul Hickox in the amount of $5,537.90. Of this total amount, $5,197.50 represents the unpaid taxes on the 495 gallons of alcohol mash seized on January 21, 1960. Notice of the federal lien for these taxes was filed with the Clerk, Superior Court, Charlton County, on April 21, 1961.

The Government called the taxpayer, Paul Hickox, to the stand as an adverse witness for the purpose of cross-examination, and proved through his testimony that on the date he transferred his farm to his sister he had no other property of any kind, and immediately after the conveyance he was insolvent. He also did not have any assets on the date that his sister transferred the farm to his wife. Appellees concede that Paul Hickox was rendered insolvent by the conveyance to his sister. Other testimony adduced by the Government showed that in 1963, Paul Hickox told the Government agent that he owned the farm. The evidence also showed that the fair market value of the Paul Hickox farm on September 15, 1958, and on April 9, 1960, was approximately $14,-900.00, and that at forced sale the farm would bring approximately $13,500.00.

With this evidence before it, the court below granted the defendants' motion for a "directed verdict", and ordered that judgment be entered against the Government and for the defendants. We reverse.

As stated above, this suit was brought by the Government against Paul Hickox, the taxpayer, Violet Hickox (his wife), Dorothy Hickox Metz (his sister), and the Citizens Bank, a subsequent mortgagee of record of Violet Hickox, to reduce Paul Hickox' distilled spirits excise tax (and related) liabilities to judgment, to set aside the conveyances of the farm to his sister and wife as fraudulent, to foreclose the Government's tax liens against the property of Paul Hickox, and to determine the validity and priority of all liens and claims of the defendants to the action as against those of the Government.

The Government in its suit specifically alleged that the conveyances to the sister and to the wife were without a fair and adequate consideration or any consideration; or, in the alternative, the said transfers were made with the intent or purpose to delay, hinder and defraud the creditors of Paul Hickox, and more particularly the United States of America.

■ The tax liability of Paul Hickox has been reduced to judgment and the validity of the same has to be assumed.

The wife and the sister, in their answer, admitted the conveyances, but denied that they were without a fair and adequate consideration or that they were made with intent or purpose to delay, hinder and defraud the creditors of Paul Hickox, and particularly the United States of America.

The Citizens Bank answered that Violet Hickox had executed two security deeds of the farm in question to it in April, 1962, and in November, 1962, to secure debts of $699.60 and $2,529.75 on which debts she still owed an amount of $2,948.25 plus interest; that it had taken these deeds as security in good faith and without intent to delay, hinder and defraud the creditors of Paul Hickox, and particularly the United States of America.

■ Georgia law provides creditors with the right to set aside fraudulent transfers. §§ 28–101, 28–102, 28–201 and 28–202, of 11 Georgia Code Annotated (1952), Title 28.[1] This remedy is available to any creditor at the time of the transfer who thereafter reduces his claim to a judgment lien.

■ The Government became a creditor of Paul Hickox on or before November 28, 1956, when the first still and the 210 gallons of nontax-paid spirits were

---

1. 11 Code of Georgia Annotated (1952), Title 28:

28–101. *Relation of debtor and creditor.*—Whenever one person, by contract or by law, is liable and bound to pay to another an amount of money, certain or uncertain, the relation of debtor and creditor exists between them.

28–102. *Rights of creditors favored.*— The rights of creditors shall be favored by the courts, and every remedy and facility afforded them to detect, defeat, and annul any effort to defraud them of their just rights.

28–201. *Enumeration of void acts.*— The following acts by debtors shall be fraudulent in law against creditors and others, and as to them null and void, viz.:

1. Every assignment or transfer by a debtor, insolvent at the time, of real or personal property, or choses in action of any description, to any person, either in trust or benefit of, or in behalf of, creditors, where any trust or benefit is reserved to the assignor or any person for him.

2. Every conveyance of real or personal estate, by writing or otherwise, and every bond, suit, judgment and execution, or contract of any description, had or made with intention to delay or defraud creditors, and such intention known to the party taking. A bona fide transaction on a valuable consideration, and without notice or ground for reasonable suspicion, shall be valid.

3. Every voluntary deed or conveyance, not for a valuable consideration, made by a debtor insolvent at the time of such conveyance.

28–202. *Innocent subsequent vendee.* —Where a sale void as against creditors is made, and the property has not been seized, and no step taken to set the sale aside, the fraudulent vendee can convey to an innocent purchaser from him, for value and without notice of the fraud, a title good as against the claims or judgments of the defrauded creditors.

seized on his farm. §§ 5001 and 5005 of the Internal Revenue Code of 1954,[2] 26 U.S.C. §§ 5001 and 5005. United States Fidelity & Guaranty Co. v. United States, 220 F. 592, 594, CA 4, 1914.

Besides becoming a creditor on or before November 28, 1956, the Government became a lien creditor on November 6, 1959, and on February 24, 1961, when the taxes here involved were assessed. §§ 6321 and 6322, Internal Revenue Code of 1954, 26 U.S.C. §§ 6321 and 6322. The Government, in seeking to void the deeds from Paul Hickox to his sister and from his sister to his wife, has furthermore reduced his tax liabilities to judgment; and even though the farm here involved had already been transferred before demand or assessment was made, since the Government has reduced the debt to judgment and established a lien, equity will set aside the transfers if fraudulently made to defeat the collection of taxes. United States v. Phillips, 59 F.Supp. 1006, 1008 (S.D.Ga.1945).

Even though revenue stamps are not essential to the validity of a deed, in a case involving conveyances alleged to be fraudulent as to creditors, the amount of stamps, or lack thereof, should permit an inference as to the adequacy or inadequacy of the consideration or complete absence thereof.

As shown by the evidence, the deed from Paul Hickox to his sister had no revenue stamps, which should permit an inference, if the law as to revenue stamps on deeds is to be followed, that the consideration was less that $100.00. The revenue stamps on the deed from the sister to the wife of the taxpayer should permit an inference that the consideration for that sale was no more than $1,000.00 if the law on the attachment of revenue stamps to deeds is to be followed; and even though there is very little law on whether such an inference arises, nevertheless, this was a circumstance which should be considered and inquired into in a case involving fraudulent transfers. If nothing else, the district court should have inquired from the sister and the wife, who were present at the trial, as to the true facts regarding the consideration paid for the transfers.

There were other badges of fraud elicited from the evidence adduced by the Government, namely, the tax predicament of Paul Hickox at all times material hereto, and especially after he had been indicted on November 12, 1957, before either of the transfers involved; the taxpayer's continued possession of the farm, continued violation of the liquor laws after the transfer to his sister; and the taxpayer's declarations of ownership to the bank on December 20, 1958, and to the Internal Revenue Agent in 1963. See, generally, 37 C.J.S. Fraudulent Conveyances §§ 79 through 97.

Possession retained by the vendor after an absolute sale of real property is prima facie evidence of fraud, which may be explained. State Banking

---

2. § 5001. Imposition, rate, and attachment of tax.

(a) Rate of Tax—

(1) *In General.*—There is hereby imposed on all distilled spirits in bond or produced in or imported into the United States an internal revenue tax at the rate of $10.50 on each proof gallon or wine gallon when below proof and a proportionate tax at a like rate on all fractional parts of such proof or wine gallon. * * *

(b) *Time of Attachment on Distilled Spirits.*—The tax shall attach to distilled spirits, spirits, alcohol, or alcoholic spirits, within the meaning of section 5002(b), as soon as this substance is in existence as such, whether it be subsequently separated as pure or impure spirits, or be immediately, or at any subsequent time, transferred into any other substance, either in the process of original production or by any subsequent process.

§ 5005. Persons liable for tax.

(a) *General.*—The internal revenue tax imposed by section 5001(a) (1) on distilled spirits shall be paid by the distiller or importer.

(b) *Domestic Distilled Spirits.*—Every proprietor or possessor of, and every person in any manner interested in the use of, any still, distillery, or distilling apparatus, shall be jointly and severally liable for the taxes imposed by law on the distilled spirits produced therefrom.

974

Co. v. Miller, 185 Ga. 653, 196 S.E. 47, and cases therein cited.

■ Furthermore, the close relationship between Paul Hickox and the grantees under the conveyances sought to be set aside should have alerted the district court to make inquiry of the true facts surrounding said transfers. Transactions between husband and wife and near relatives, to the prejudice of creditors, are to be closely scanned and their bona fides clearly established. State Banking Co. v. Miller, supra, and cases therein cited.

■ The evidence before the district court was sufficient to make out a prima facie case of fraud, and the burden of showing good faith was shifted to the parties to such conveyances. 37 C.J.S. Fraudulent Conveyances § 382, p. 1211.

■ Apparently the motion made by the defendants at the close of the Government's evidence was a motion to dismiss under Rule 41, Federal Rules of Civil Procedure. Under this rule, when the plaintiff in an action tried by the court without a jury has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. And although the Government urges in this appeal that the Court has sufficient evidence in the record to render judgment, it would be a violation of the spirit of the Rules of Civil Procedure

if we were to deny the defendants their day in court and not allow them to come forward with their evidence showing the real circumstances of the transfers involved here.

The district court apparently believed that this case turned, primarily, on questions of the notice of the tax liens and the bona fides of the conveyance to the bank, which was not the case. The bank's lien will be protected, and the Government concedes this, if the bank proves the bona fides of the transfer to it by the wife and no prior knowledge of the fraudulent transfers and the tax predicament of the taxpayer, Paul Hickox, and it proves the indebtedness to it.

The Government, in its suit below, was further claiming, in the alternative, that it had a first lien for its tax claim arising in 1956 on the lot or tract of land on which the illicit still was situated, pursuant to § 5004(a) (1) of the 1954 Code.[3]

We do not reach this point because of our disposition on the question of the fraudulent conveyances. If the Government succeeds in a subsequent trial and sets aside the conveyances, thereby leaving the farm in the name of the taxpayer, Paul Hickox, this point may never have to be decided, since the property here involved apparently will be sufficient to pay the Government, and the bank if it has a valid claim. If it must be decided, the district court should be given an opportunity to decide the same.

We, therefore, reverse and remand for a full hearing not inconsistent with the opinions herein expressed.

3. § 5004, Lien for tax.
  (a) *Lien Applicable to Distilled Spirits.*—
    (1) *Property subject to lien.*—The tax imposed by section 5001(a) (1) shall be a first lien on the spirits distilled, the distillery used for distilling the same, the stills, vessels, fixtures, and tools therein, the lot or tract of land on which such distillery is situated, and on any building thereon, from the time such spirits are in existence as such until (except as provided in paragraph (3)) such tax is paid.