Linda P. **RIVERA**, Plaintiff,

v.

**UNITED STATES of America, Defendant.**

No. 91–2879–Civ.

United States District Court,
S.D. Florida.

Dec. 30, 1992.

Theodore F. Brill, Plantation, FL, for plaintiff.

A.B. Phillips, Dept. of Justice, Tax Div., Washington, DC, for defendant.

*FINDINGS OF FACT AND CONCLUSIONS OF LAW*

MARCUS, District Judge.

THIS CAUSE was tried as a bench trial before the undersigned on December 3, 1992. This is an action for recovery of funds seized by the Internal Revenue Service ("IRS") pursuant to a Notice of Levy on a bank account held by Plaintiff, Linda P. Rivera, for taxes due and owing by her husband, Leroy Griffith. Plaintiff does not challenge the validity of the assessment, but claims only that the levy was wrongful. This Court has jurisdiction under 26 U.S.C. § 7426(a)(1). Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, we make the following Findings of Fact and Conclusions of Law.

### I. *Findings of Fact*

1. On or about September 12, 1992, the IRS levied upon account number 4729088743 at NCNB National Bank of Florida (the "Account"), in Miami, to satisfy the outstanding tax liabilities of Leroy Griffith incurred between 1969 and 1978. That account number was entitled "Linda P. Rivera I.T.F. Leroy Griffith."

2. The parties have stipulated that the amount levied upon was $7,253.76; that Rivera had sole signatory authority over the account at all times; and that Rivera intended, when the account was opened on August 1, 1985, to create a "Totten Trust" account payable to Griffith as beneficiary upon Rivera's death.

3. At the time the Account was opened, Plaintiff and Griffith were living together, and were thereafter married on June 8, 1989.

4. Pursuant to an antenuptial agreement, Griffith transferred his interests in the following corporations to Rivera as tenants-by-the-entirety: Gayety Theatres, Inc., Ell–Gee, Inc. and Paris Follies, Inc. Griffith and Rivera also own controlling interests as tenants-by-the-entirety in Pussycat Theatres, Inc. and Nu–Wave, Inc. *See* Def. Ex. 3.

5. The Account was Rivera's sole checking account. It was a money market account from which she could draw three checks monthly without penalty. The primary

source of the funds on deposit in the Account was Rivera's salary income from Biscayne Video Club, an enterprise owned by Rivera, from which she deposited $350.00 per week from June 1989 until the seizure of the Account in 1991.

6. On many occasions both before and after her marriage to Griffith, Rivera drew checks on the Account payable to the order of Griffith personally or one of the several business ventures in which Rivera and Griffith shared an interest. Griffith knew of the Account and on many occasions would ask Rivera for short-term loans to meet cash-flow shortfalls at the various businesses. Rivera never declined Griffith's requests, although it was clearly within her power and discretion to do so. In every instance those loans were repaid to Rivera in full by check, and deposited back into the Account. The various corporations owned by Rivera and Griffith never contributed any funds into the Account beyond the amount of their indebtedness to Rivera. Further, Rivera was the only one ever to make deposits to the Account. Rivera also used the Account for her personal expenditures, for home improvements, physicians' bills and in one instance to finance a vacation to the Trump Casino.

## II. *Conclusions of Law*.

7. The Account in this cause was a "Totten Trust." A "Totten Trust" is a trust created by the deposit of funds into a bank account designated "in trust for" the beneficiary and is revocable at will until the death of the trustor. *See Seymour v. Seymour*, 85 So.2d 726, 727 (Fla.1956); *Serpa v. North Ridge Bank*, 547 So.2d 199, 200 (Fla. 4th DCA1989); *In re Totten*, 179 N.Y. 112, 71 N.E. 748 (1904).

8. Under Florida law, the beneficiary of a Totten Trust has a contingent remainder interest in the account. *See In re Guardianship of Medley*, 573 So.2d 892, 907 (Fla. 2d DCA 1990); *Abbale v. Lopez*, 511 So.2d 340, 341 (Fla. 3rd DCA 1987); *Serpa*, 547 So.2d at 200; *Valdez v. Muniz*, 164 So.2d 876, 878 (Fla. 2d DCA1964).

9. Both parties agree that the United States can attach no greater interest in the funds represented by the Totten Trust than the interest actually possessed by the taxpayer, Griffith.

10. In a wrongful levy action, the initial burden is on the Plaintiff to establish that she had title or ownership of the property levied against. After such a showing, "the burden of proving the connection between the taxpayer and the property at issue is on the government." *See Morris v. United States*, 813 F.2d 343, 345 (11th Cir.1987). The Government must make the showing by substantial evidence. *See Valley Finance Inc. v. United States*, 629 F.2d 162, 171 n. 19 (D.C.Cir.1980), *cert. denied sub nom. Pacific Dev't, Inc. v. United States*, 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981). The Plaintiff, however, retains the ultimate burden of persuasion that the levy should be overturned. *See id.; Morris*, 813 F.2d at 345.

11. Plainly, the plaintiff met its initial burden of showing title to the account by the parties' stipulation that the Account was opened by Rivera as her personal account "in trust for" Griffith, with Rivera retaining sole signatory authority. The Government was then required to show that the Account was not simply a Totten Trust with Griffith holding merely a contingent remainder interest as beneficiary, but that the Account was actually a joint account over which Griffith exercised such control that he could be properly said to have an ownership interest in the Account.

12. In determining whether this was a Totten Trust or, in practice a joint account, three factors are especially relevant: first, the source of the funds in the account; second, who controlled the account; and third, the beneficiary or beneficiaries of withdrawals from the account. The source of the funds in the Account was exclusively Rivera. Griffith's contribution to the Account arose only in the form of checks drawn on the Account of the businesses in which the Griffith and Rivera held a joint interest, which checks were repayments of loans already made from the Account. Those funds cannot be designated as originating from Griffith personally or even from the jointly held businesses, solely by virtue of being lent to Grif-

fith or the businesses and being repaid by them. Since Griffith was not the source of the funds, the "source" argument alone cannot alter the "in trust for" character of the Account. *See, e.g., F.P.P. Enterprises v. United States*, 830 F.2d 114, 117 (8th Cir. 1987) (holding that trusts without economic substance, where trustees did not exercise ultimate power of control over the res, could not repel IRS levy).

13. Furthermore, at all times Rivera retained exclusive legal and equitable control over the Account. She alone was empowered to authorize withdrawals by her signature, and she alone retained the discretion as to whether a withdrawal would be made. She spent the money as she saw fit, occasionally dispensing significant amounts for loans to support the businesses in which she held a joint interest. Griffith could ask for a loan, but Rivera at all times retained the capacity to reject the request. The suggestion that Rivera's lending money to Griffith or to the jointly held businesses converts the Account into one in which Griffith or the businesses held an ownership interest proves too much. On that reasoning, any individual or business to whom repeated loans were extended from a given account would be deemed to possess an ownership interest in the account. Transfers out of the Account were made for the benefit of Rivera or for enterprises that benefitted both Rivera and Griffith. The fact that both the taxpayer and the claimant benefitted from the proceeds of the Account does not alone, nor taken together with the other facts convert the Account to one jointly held by both. Thus, an analysis of these central three factors persuades the Court that the Account was not a joint account with Griffith effectively controlling an ownership interest, but was rather a genuine Totten Trust.

14. Moreover, the Government has not shown that the Account changed its nature or character at any time. The Government stipulated that the Account was initially set up by Rivera with the genuine intent that it be exclusively her account "in trust for" Griffith. In order for the levy to be valid, the Government must show that the nature of the Account fundamentally changed from its initial status as a genuine Totten Trust. Riv-era testified that she lent money to Griffith and to the joint entities both before and after the marriage and antenuptial agreement. The Government offered no evidence that Rivera's pattern of usage and her disposition towards the Account ever changed after the Account was opened, an event which the Government stipulated was done with intent to create a Totten Trust. And this Court cannot find that any such change in fact occurred or that Rivera's intent that the account be created as an "in trust for" account changed in any way.

15. Accordingly, the Government has failed to meet its burden of showing that there was a nexus between the taxpayer and the Account such that Griffith somehow acquired an ownership interest in the Account sufficient to support the tax levy. Therefore, the Court finds that the levy was wrongful, and it is hereby

ORDERED AND ADJUDGED THAT judgment is entered in favor of Plaintiff and against Defendant, and

Defendant is ORDERED to release to Plaintiff the levied funds plus interest accrued from the date of the levy forthwith. Further, the Court finds that Plaintiff is the prevailing party in this cause and consequently is entitled to reasonable litigation and administrative costs and attorney's fees. *See* 26 U.S.C. § 7430. Plaintiff is directed to file an appropriate pleading documenting its requests for fees and costs no later than ten (10) days from the date of this Order.

DONE AND ORDERED.