**Jacqueline Drewery NELSON, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 91–438–4–MAC(DF).**

United States District Court,
M.D. Georgia,
Macon Division.

Feb. 22, 1993.

---

Denmark Groover, Jr., Macon GA, for plaintiff.

Frank L. Butler, III, Macon, GA, Janice L. Feldman, Dept. of Justice, Washington, DC, for defendant.

### ORDER

FITZPATRICK, District Judge.

This case was heard a by the court, sitting without a jury on December 21, 1992. Plaintiff seeks to overturn and to remove the Government's tax levy and lien that has been filed and attached on her house and property. The Government contends that Plaintiff holds the property as nominee for her father, Joseph Drewery, the person against whom the delinquent taxes have been levied. As alternative theories of recovery, the Government alleges a constructive trust, or a fraudulent transfer under O.C.G.A. § 18–2–22(2). The court is now prepared to render its decision in this case.

### FINDINGS OF FACT

Plaintiff, Jacqueline Drewery Nelson, is the daughter of Joseph Drewery. Joseph Drewery is the taxpayer against whom the Government has levied for nonpayment of back taxes.

In 1982, Mr. Drewery purchased 4.57 acres of land from Mr. Booker W. Chambers. (Plaintiff's Exhibit 1). This land was located on Graham Road in Jones County, Georgia. Mr. Drewery paid $4,000 for the property. Shortly after the purchase of the land, he began building a house on that land. He built the house with his own labor and with the help of some friends.

In February 1983, Mr. Drewery gave the house to his daughter, the Plaintiff in this action. (Plaintiff's Exhibit 2). She moved there with her minor son shortly after this gift.

Just over a month after receiving the property, Plaintiff deeded the property to Ms. Gussie Matthews. (Plaintiff's Exhibit 3). Ms. Matthews dated Mr. Drewery at the time of this transfer and she had loaned Mr. Drewery approximately $15,000 toward the construction of the Graham Road house. Plaintiff took back a security deed on this transfer. The purchase price reflected in the security deed is $50,000. It also provides for a monthly payment of $476.17.

Ms. Matthews never made any of the monthly payments to Ms. Nelson. · Just over three years later, in May 1986, Ms. Matthews quitclaimed her rights in the property to Ms. Nelson. (Plaintiff's Exhibit 5). This deed reflects that the transfer was in lieu of foreclosure. Both of these transactions (from Plaintiff to Ms. Matthews and back) were made at the direction of Mr. Drewery. He paid for the document preparation in both transactions and the filing of the deeds, and was present at the closing of the transactions.

During this entire period from 1983 to 1990, the utility accounts for the Graham Road property remained in Mr. Drewery's name. He stayed there periodically, using the larger of the bedrooms as his own. He also stored personal items at the house. He even helped his daughter with maintenance of the house.

Property and *ad valorem* taxes were charged to and paid by Plaintiff. (Plaintiff's Exhibits 6–9). She testified that she paid the utility bills, even though the accounts remained in her father's name. She admitted that her father helped her with the maintenance and upkeep of the house because he was handy with tools and had built the house.

The basis of the tax levy is the organized, illegal gambling operation supervised, controlled and managed by Joseph Drewery. Mr. Drewery owes the Government in excess of $1.4 million. (Gov't Exhibit 9). The Plaintiff does not challenge the legitimacy or accuracy of that levy because it is not rele-

vant to this matter. It is presumed to be correct.

Mr. Drewery was convicted in the Superior Court for Bibb County, Georgia, on September 4, 1992, for state law RICO violations and multiple counts of running an illegal lottery. He was sentenced to ten years in prison as a recidivist not eligible for parole. (Gov't Exhibit 8–E). He is currently released from jail pending the appeal of his case in the state courts. He was also convicted in 1978 of conducting an illegal gambling operation. (Gov't Exhibit 8–B).

As a result of these illegal gambling operations, agents from the Internal Revenue Service ("IRS") calculated Mr. Drewery's delinquent tax obligation. On April 11, 1990, the IRS calculated Mr. Drewery's liability for back taxes based on the extent of and income from his illegal gambling operation in 1990 (as evidenced by the indictment that year). As a result of that assessment, Mr. Drewery became delinquent on a tax bill of over $1.4 million. The IRS then levied this sum against the house that now belongs to Plaintiff and sought to sell it at foreclosure sale to recoup part of the delinquent tax debt. Prior to the foreclosure sale, Plaintiff and the Government agreed that the house would not be sold pending final determination of this suit by this court.

### CONCLUSIONS OF LAW

*The Government's Federal Law Theory*

■ The Government contends it should be permitted to go forward with its foreclosure sale because Plaintiff holds the subject property as the taxpayer's nominee. This theory of recovery is based solely on Federal Law and civil actions filed under 26 U.S.C. § 7426. That section provides,

"If a levy has been made on property ... any person (other than the person against whom is assessed the tax out of which such

levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States.

Plaintiff, therefore, has the burden of showing that she has an interest in the property, and that the IRS levy on that property is wrongful. *Dixon v. United States*, 687 F.Supp. 598, 599 (M.D.Ga.1988) *aff'd*, 872 F.2d 435 (11th Cir.1989). The levy is wrongful if the property levied upon does not belong, in whole or in part, to the taxpayer against whom the levy was made. *Id.* (*quoting Arth v. United States*, 735 F.2d 1190, 1193 (9th Cir.1984)). Once Plaintiff has demonstrated her interest, the burden switches to the Government to prove a nexus between the taxpayer and the property by substantial evidence. *Morris v. United States*, 813 F.2d 343, 345 (11th Cir.1987). The ultimate burden remains with the Plaintiff, however, to convince the court that the levy should be overturned. *Id.*

■ Plaintiff easily established her ownership interest in the property the Government has seized. She is the last recorded owner of the property. There are no encumbrances shown in the evidence, other than the Government's tax lien. The court concludes Plaintiff has standing to bring this action.

The Government must prove a nexus, or connection, between the taxpayer and the property by "substantial evidence." *Morris*, 813 F.2d at 345. The Government argues, with no authority, that this requires more than a scintilla but less than a preponderance of the evidence. The court disagrees.[1]

■ A review of the case law shows that where "substantial evidence" is required, it is because the right or property interest being infringed is deemed extraordinary or unique

---

**1.** How much evidence is more than a scintilla and less that a preponderance seems to be in the category of how many angels can dance on the head of a pin or does a tree that falls in the forest with no human ear to hear it make a sound. In other words, more inclined toward the realm of metaphysics than the law. Possibly, one could theorize that if a grain of sand would tip the scales and thus carry the burden by a preponderance then the addition of a mustard seed would amount to enough evidence to carry the burden by "substantial evidence." On the other hand, since we are in the realm of law and not metaphysics these interesting, but distracting, issues must be considered irrelevant, and we must move on.

in some way.[2] In fact, the Eleventh Circuit in *Morris* quoted with approval the language of the district court's order, which said, "In a post-levy proceeding, the IRS 'must justify its *extraordinary* action in connecting a third party's property to the particular delinquent taxpayer.'" *Morris*, 813 F.2d at 345 (quoting *Valley Finance, Inc. v. United States*, 629 F.2d 162, 171 n. 19 (D.D.C.1980) *cert. denied sub nom. Pacific Development Inc. v. United States*, 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981)) (emphasis added). Since the action by the Government of seizing a seemingly innocent person's property to satisfy the tax liability of another person is extraordinary, the burden of proof on the Government ought to be greater than a mere preponderance. Since the Eleventh Circuit did not require "clear and convincing" evidence, this court concludes that "substantial evidence" is considerably more than a preponderance but less than clear and convincing proof.

■ In attempting to prevail in its burden, the Government points to the following facts to show the required nexus. First, the utility accounts remained in the taxpayer's name. He occupied the larger of the bedrooms when he stayed in the house and stored personal items there. He assisted with the maintenance and upkeep of the house. And he suggested, or directed the transfer from Plaintiff to Ms. Matthews while he was dating Ms. Matthews.

The court finds these facts unpersuasive to support a finding of a nexus by substantial evidence. Most of these facts can be discounted as the normal relations and burdens of family members in small southern towns. Staying at the house, storing personal property there, and the "visiting" parent using the larger bedroom are all fairly normal incidents of a family relationship in the south. Even leaving the utility accounts in her father's name more nearly demonstrates a desire by Plaintiff to pay no more additional deposits than a subterfuge to defraud the Government.

■ The only evidence asserted by the Government that might tend to convince the court of the nexus between the taxpayer and the property is the transaction between Ms. Matthews and Plaintiff. However, the Government does not show that Plaintiff had to comply with her father's wishes. There was no legal obligation on her part to convey the house and property to Ms. Matthews. She did transfer the property as he requested. The court finds this decision by Plaintiff to have been motivated by filial duty to her father, rather than by any understanding that the house is really his. The Government has simply failed in its burden to show the required nexus by substantial evidence.

■ Even if the Government carried its burden, Plaintiff has satisfied her ultimate burden of showing that the levy should be set aside. The Government has seized her home. She lives there with her only child. For the court to permit the seizure and sale to go forward would result in these two people (Plaintiff and her child) being thrown into the street. They would be rendered literally homeless. Because of the minimum wage type job worked by Ms. Nelson, she would have little chance of finding satisfactory, alternative accommodations.

This case does not concern a business or corporate assets. Rather it involves the home of a mother and her son who are trying to get by. Just because her father is a criminal, there is no reason why punishment for his crimes should be inflicted on his daughter and grandson. The court is satisfied that by a preponderance of the evidence this tax levy should be overturned.

*The Government's State Theories*

The Government also seeks to proceed on state theories of recovery for fraudulent transfer or constructive trust. The Govern-

2. In labor law, the National Labor Relations Board must show by substantial evidence that a particular employee's discharge was motivated by anti-union animus by the employer. *See, e.g., N.L.R.B. v. Computed Time Corp.*, 587 F.2d 790, 795–96 (5th Cir.1979). This is because "'management is for management.'" *Id.* at 795 (quot-ing *N.L.R.B. v. McGahey*, 233 F.2d 406, 413 (5th Cir.1956)). Interference with the right of management to discharge for "good cause, bad cause, or no cause at all" will only be tolerated under limited circumstances. *Id.* (citing *N.L.R.B. v. Nabors*, 196 F.2d 272, 275 (5th Cir. 1952)).

ment concedes that it has the burden of proof on both of these theories. *Federal Deposit Insurance Corp. v. United States*, 654 F.Supp. 794, 808 (N.D.Ga.1986).

■ The Government seeks to set the transfer from Mr. Drewery to Plaintiff aside pursuant to O.C.G.A. § 18–2–22(2).[3] That code section provides that any conveyance made with the intent to delay or defraud creditors who are in existence or known to the grantor, where the intent to delay or defraud is known by the taking party, is void as to those creditors. The Government has failed to satisfy these elements.[4]

■ The Government has not proven that the transfer from Mr. Drewery to his daughter was with the intent to delay or defraud his creditors.[5] The Government contends that the existence of the badges of fraud can be circumstantial evidence of the intent to defraud. *United States v. Hickox*, 356 F.2d 969 (5th Cir.1966). The Government goes on to identify that the close relationship of the parties, the lack of consideration for the conveyance, among others, as badges of fraud sufficient to prove the existence of Mr. Drewery's intent to defraud creditors. The court wonders why a person who is trying to delay or defraud his creditors would put "For love and affection" as the consideration for the transfer of the property? It does not seem logical. Surely a person who sought to defraud his creditors would invent some sort of valuable consider-

ation, at least to show on the recorded instrument. That is not the case here.

■ Similarly, Georgia law appears to require close scrutiny of a transaction when the parties are married to each other or closely related. *See State Banking Co. v. Miller*, 185 Ga. 653, 655, 196 S.E. 47 (1938); *Jones v. J.S.H. Co.*, 199 Ga. 755, 35 S.E.2d 288 (1945). However, this transaction survives close investigation. The parties did not attempt to hide the gift of the house. Mr. Drewery does stay there, but not regularly. Given Mr. Drewery's rather itinerant nature, it does not appear strange that he has items stored at this house or possibly others. From the testimony, it appears that Mr. Drewery changed residences fairly frequently. Simply put, the court finds that the Government did not meet its burden of proof on the element that Mr. Drewery intended to delay or defraud his creditors when he gave his house to this Plaintiff.

■ However, even if Mr. Drewery did intend to defraud his creditors, the Government still cannot recover. The statute requires at least constructive knowledge by the taking party that the purpose of the conveyance is to delay or defraud creditors. *Stokes v. McRae*, 247 Ga. 658, 278 S.E.2d 393 (1981). Plaintiff testified that she did not know why her father gave her the house. This testimony is uncontradicted. Therefore, Plaintiff

---

**3.** The Government presented evidence to support recovery under O.C.G.A. § 18–2–22(3). This code section is not available to the Government for two reasons. First, it was not plead in the Amended Answer. The answer only tracks the language of subsection (2). Second, the Pretrial Order, by which the trial of this case is controlled (Pretrial Order of 24 September 1992 at 14), also tracks the language of subsection (2). As a result, subsection (3) of § 18–2–22 is not available as a remedy for the Government.

**4.** The Government has established two of the elements. There was a conveyance and the Government was a creditor at the time the conveyance was made. These two need not be discussed further.

**5.** The Government offered the testimony of Ms. Edna McGee. She was, at one time, Mr. Drewery's girlfriend. She testified that Mr. Drewery told her that he was transferring the house to his

daughter so that, if anything happened to him, no one would be able to get it.

The court finds this testimony completely unbelievable. Ms. McGee was convicted in 1989 on an indictment alleging two counts of the sale of cocaine. She was sentenced to one year in jail and four years probation. While serving her probation, she was interviewed by the Macon/Bibb County Drug Unit concerning her knowledge of Mr. Drewery. On cross-examination, she testified to the effect that it was the officers who first mentioned the house on Graham Road. The court finds that the potential for suggestion and influence was simply too great for this witness. She may believe her testimony, but the court does not.

In addition, her demeanor on the witness stand was poor. Even accounting for the natural nervousness of a witness, Ms. McGee was an ineffectual witness. The court will not rely in any way on the testimony of this witness.

had no actual knowledge of Mr. Drewery's intent to delay or defraud.

 There is likewise no constructive knowledge of her father's intent by Ms. Nelson. There is insufficient evidence to show that a reasonable person would have known, or put on notice to suggest further inquiry into, Mr. Drewery's intent to delay or defraud his creditors at the time of the transfer. It is equally reasonable to conclude from the evidence presented that the father of a daughter who has a young child would wish to provide them with a place to live if he could do so. Where circumstantial evidence is used to establish a fact, like reasonable knowledge of the grantor's intent to defraud, it must be sufficient to establish that fact and no other. (Taken from this court's standard jury charge in civil cases.) The circumstantial evidence now before the court fails this standard. The Government has not established that Plaintiff knew or reasonably should have known that her Father intended to delay or defraud his creditors.

Therefore, the Government cannot have the conveyance of the Graham Road property set aside under O.C.G.A. § 18–2–22.

 The Government's last theory of recovery is that there was an implied trust. O.C.G.A. § 53–12–26 (1982).[6] An implied trust occurs when one party pays for property that is transferred in the name of another party. This code section does not apply to these facts.

 Section 53–12–26(1) will create an implied trust when record ownership is in one person, but beneficial ownership, "from payment of the purchase money or from other circumstances," is another. In this case, the purchase money was paid on December 3, 1992. The transfer to Plaintiff took place on the last day of February 1983. If the payment of the purchase money and the transfer to the record owner do not take place at or near the same time, no implied trust is created. *Johnson v. Johnson*, 210 Ga. 795, 82 S.E.2d 831, 834 (1954).

A transaction between parent and child is presumed to be a gift; however, this presumption may be rebutted by evidence that some other relationship to the property was intended. *Talmadge v. Talmadge*, 241 Ga. 609, 247 S.E.2d 61 (1978). There is insufficient evidence in this record to rebut the presumption that this transaction was simply a gift. The Government attempts to make much of the fact that no gift tax return was ever prepared or filed when the property was conveyed to Plaintiff. The Government neglects to also point out that on a small transaction like this one, no gift tax is even due. Failure to file a gift tax return may have been an oversight, but it creates no additional liability in this action. The court has already discussed the Government's other indicia of ownership and found them unpersuasive; it is not necessary to repeat that analysis here.

### CONCLUSION

The Court finds for Plaintiff on all issues in this case. The Government is **ORDERED** to remove or release its lien from this property in the records of Jones County. The Government is permanently enjoined from taking any action to enforce its levy of tax liability against this property. It is hereby **ADJUDGED, ORDERED,** and **DECREED** that judgment be entered for Plaintiff, Jacqueline Drewery Nelson.

SO ORDERED.

---

6. This is the version of the statute in effect at the time these conveyances were made.