The following issues, among others, were submitted to the jury:
1. "Was the said deed for lands from Natt Atkinson to his sons (448) made by him with intent to hinder, delay and defraud his creditors?" Ans.: "Yes."
2. "Did defendants, E. B. and C. B. Atkinson, purchase and take a deed for said Whittier lands from Natt Akinson [Atkinson] for valuable consideration, without notice or knowledge of any fraud?" Ans.: "No."
7. "Has the defendant, H. N. Atkinson, converted to her own use, and does she now wrongfully detain and withhold any other money or funds belonging to the estate of Natt Atkinson? and if so, what amount?" Ans.: "Yes; $5,000."
The evidence, charge and exceptions are annotated in the opinion.
Judgment in favor of plaintiff. Appeal by defendants.
This case was before us at Spring Term, 1898, upon a judgment of nonsuit, treated as a demurrer ore tenus, to the complaint (122 N.C. 683). Since that time the case has been tried upon the facts elicited, and is here again upon exceptions taken at the trial.
It is not the practice of this Court to review its opinion rendered on a former hearing, upon a second appeal in the same case, and we do not propose to do so now. But as the brief of the learned counsel for defendants has called in question the correctness of our former opinion, we propose to notice it so far as to say that we consider it our duty to correct errors in our opinions when found, let them be presented as they may. But after a year's reflection, we see no error in our former opinion. It seems to us to be based upon principles of justice (449) and sound reasoning.
If the legal title to the Graham land and the Von Ruck land had been in Natt Atkinson and he had conveyed them in fraud of his creditors to his wife, there could be no doubt that section 1446 of The Code would apply, and that the plaintiff, administrator, could maintain his action at law, and have them sold and converted into assets. If Natt Atkinson were living, his creditors could not proceed to sell these lands under execution, and acquire title to them in that way, for the reason that the legal title was not in Natt, and the statute of 13 Elizabeth would *Page 310 
not apply. Godwin v. Rich, 23 N.C. 553. But the fact that he bought and had others to convey to his wife is as much a fraud upon his creditors as if he had owned the lands and conveyed them himself. And while for technical reasons, a court of law could not reach this fraud, a Court of Equity would. Godwin v. Rich, supra.
The only difficulty, then, is the technical one that the fraud in one case is reached at law, under the statute of 13 Elizabeth, while in the other case, it is reached in a Court of Equity, or a court exercising equitable jurisdiction. The fraud upon the creditors is the same as if he had conveyed the land himself. The right of the creditors to have them subjected to the payment of their debts is the same, and the defendant has no more right to hold this property so fraudulently conveyed to her from the creditors of her insolvent husband than if he had conveyed them to her.
The plaintiff is so far the representative of the creditors of his insolvent's estate, under our laws as they now stand, as to authorize him to follow these lands in a Court of Equity, into the hands of the fraudulent donee, and to have them converted into assets for the payment of intestate's debts.
(450) The principles are the same — fraud on creditors; the object to be attained is the same — the appropriation of the property to the payment of the debts of the insolvent intestate; and such refinements as may have stood in the way of such actions as this, have been removed, and have given place to the demands of common sense and justice. The facts disclosed on the trial show that Natt Atkinson, plaintiff's intestate, was hopelessly insolvent in 1893; that he was indebted in a large amount, ranging from $75,000 to $90,000, with available property, for the payment of debts, not exceeding one-third of his indebtedness; that his creditors were pressing him on all sides; that among other debts, he owed C. H. Belvin, cashier of a Raleigh bank, a large debt which was being pressed, and which, at March Term, 1894, of Buncombe Court, was reduced to judgment, amounting to $14,022.52.
The largest property the intestate owned was a three-eighths interest in a large tract of land lying in Swain County, known as the Whittier lands, and said to contain 75,000 acres.
This tract of land he conveyed to two of his sons, C. B. and E. B. Atkinson, 1893, while so insolvent and while being pressed by his creditors. These sons paid him nothing for the Whittier land, nor did they promise to pay him anything, nor were they able to pay him anything, though the consideration named in the deed, which had no witness to it, was $40,667. This land was incumbered to some extent when it was conveyed by Natt Atkinson to his sons, and defendants offered evidence to show that they promised to remove these incumbrances, and it is *Page 311 
argued by defendants that this was a consideration. But we see no consideration in this evidence, if true. It was simply taking these lands subject to the incumbrances upon them. It is not shown that the incumbrances upon the lands were put there by Natt Atkinson or that he was bound for them. As they were incumbrances they had to be paid before a clear title could be made to a purchaser. And it is shown that C. B. and E. B. Atkinson had nothing with which to discharge (451) these incumbrances, except the Whittier lands.
Soon after the conveyance of the Whittier lands to C. B. and E. B. Atkinson by their father, Natt, C. B. Atkinson conveyed his interest to E. B. Atkinson, his brother and cograntee from Natt. This conveyance was without consideration.
About 1 August, 1894, this Whittier land was sold to a corporation engaged in the lumber business for the sum of $144,000, out of which the Atkinsons realized the sum of $15,000 over and above the liens upon the property, and in addition to this the sum of $6,000 as commissions, of which last sum it seems that Natt was entitled to two-thirds and E. B. Atkinson to one-third. This $15,000 was paid to Natt or paid into bank and placed to his credit.
On 14 August, 1894, he paid the Cartmell mortgage of about $4,000 out of the Whittier land money. This debt was a part of the price of the land when bought of Graham, and deed made to Mrs. Atkinson — was her debt and her mortgage that was discharged, leaving the legal title in her.
On 15 August, 1894, the intestate, Natt, bought what is called the McGrew tract from Von Ruck, for which he paid out of the Whittier land money $5,097, and had the deed made to Mrs. Atkinson; and on 29 August, 1894, the intestate died, and soon thereafter the plaintiff was appointed and qualified as his administrator. The balance of the Whittier land money not paid out on the Cartmell debt and to Von Ruck for the McGrew place was left in the hands of the defendant, Harriet Atkinson; and on 15 September, 1894, she bought what is called the Ballard lot in the city of Asheville, for which she paid $1,175 out of the Whittier land money and took title to (452) herself.
On or about 1 November, 1894, she bought a lot or an interest in a lot from M. E. Carter in the city of Asheville, for which she paid him $2,000 out of the Whittier land money, and took the title to herself; and the balance of the Whittier land money the jury find she still has in her hands, amounting to $5,000.
Taking these facts to be true, and the jury have found them to be true, they develop and uncover a most palpable fraud. But defendants complain of the charge of the court and file many exceptions, in which *Page 312 
it is contended that the charge contains erroneous propositions of law; that it expresses opinions upon questions of fact, and that it decides issues of fact which should have been left to the jury and have been decided by them. While the charge was heroic, we are of the opinion that it was fair to the defendants. It was given in a trial demanding heroic treatment and should not be condemned on that account if it was fair to the defendants.
The court directed the jury, if they believed the evidence, to find the first issue, "Yes," and second issue, "No." The defendants complain of this charge. But if it be true, as the jury found it to be, that Natt Atkinson, being notoriously insolvent, with his creditors pressing him, conveyed the principal part of his estate to two insolvent sons without consideration; that one of these sons soon thereafter conveyed to the other without consideration; and that soon thereafter a sale of this property was effected, by which $15,000 or $20,000 was realized, and this money, soon after its receipt, was paid over to Natt Atkinson or placed in bank to his credit, and that he used and dealt with it as his own, we can see no ground for complaint. There was no evidence — none that could have been submitted to a jury — controverting these facts. (453) Wittkowsky v. Wasson, 71 N.C. 451; Spruill v. Ins., Co., 120 N.C. 141; Cable v. R. R., 122 N.C. 892; S. v. Gregg, ib., 1082.
Had E. B. Atkinson, the fraudulent grantee, held on to the Whittier land money, the fraudulent grantor Natt could not have recovered it out of him; but the creditors of Natt, who were thereby defrauded might have done so. But this question is not involved in this action, as the fraudulent grantee, recognizing the fact that the money was not his but that it was the money of the fraudulent grantor (his father), turned it over to him. It seems to us that the plaintiff's case might have rested here. The money being back in the hands of Natt, the insolvent debtor, and recognized as his by the fraudulent grantee, it then became a question as to whether he could give it to his wife or not. As the payment of the Cartmell debt was in fact a gift to her of that amount, the purchase of the Von Ruck or McGrew place by him and having the title made to his wife, was a gift to her. The balance of this Whittier land money, left in her hands, belonged to her insolvent husband, and she has no right to hold it from his creditors. She had no right to invest this money in the Bland lot or the Carter lot, and as the money, with which she paid for them belongs to her husband's estate, the equitable title vested in his heirs for the benefit of his creditors, and made her a trustee. But the judge told the jury that if Natt Atkinson, being insolvent or greatly embarrassed with debt, made a conveyance to these two sons without consideration, the law would presume fraud. Defendants complain of this instruction, but we think it sound law.Redmond v. Chandley, 119 N.C. 575. *Page 313 
The court allowed the plaintiff to offer evidence of the general (454) reputation of Natt Atkinson's insolvency, and the defendants excepted. But the ruling of the court in allowing this evidence seems to be well supported by authority. Leak v. Covington, 99 N.C. 559, and many other cases.
The court allowed declarations of the daughters (who are also parties defendant), made in the presence and hearing of their mother, to be offered in evidence, and the defendants excepted. But the court seems to be sustained by Merrill v. Whitman, 110 N.C. 367; S. v. Suggs, 89 N.C. 527;Tobacco v. McElwee, 96 N.C. 71.
The court allowed in evidence declarations of Natt Atkinson made in the presence of E. B. and C. B. Atkinson, and the defendants excepted. But the court seems to be supported in this ruling by Ward v. Saunders, 23 N.C. 382, and by the authorities cited above.
It does not seem to us that any of this evidence objected to did or could have affected the merits of the case. But we have considered it as if it could.
The whole defense has been made upon technical grounds, and we are sure that the defendants have no reason to complain at the manner in which this defense has been made. And this is intended, not as a reflection upon, but as a compliment to the able management of the defense. But when the case is stripped of these technical objections it leaves exposed to view a most palpable fraud.
NO ERROR.
Cited: Hobbs v. Cashwell, 152 N.C. 190.
(455)