Karen U. HILL, Plaintiff,

v.

UNITED STATES of America, Defendant
and Third–Party Plaintiff,

v.

Maurice D. HILL, and Lore C. Hill,
Third–Party Defendants.

Civ. No. 1:90CV138.

United States District Court,
W.D. North Carolina,
Asheville Division.

Oct. 13, 1993.

264

Richard S. Daniels, Patla, Straus, Robinson & Moore, P.A., Asheville, NC, for plaintiff and third-party defendants.

David B. Blair, Tax Div., U.S. Dept. of Justice, Washington, DC, Clifford C. Marshall, Asst. U.S. Atty., Asheville, NC, for defendant and third-party plaintiff.

## MEMORANDUM OF DECISION

RICHARD L. VOORHEES, Chief Judge.

THIS MATTER came before the Court on June 22, 1992, for non-jury trial based on a complaint filed July 26, 1990. The Government's answer with counterclaims was filed on October 12, 1990. Upon completion of the two-day trial, counsel requested the opportunity to file post-trial briefs which were subsequently filed in July, 1992. Pursuant to Fed. R.Civ.P. 52, the Court renders its findings of fact and conclusions of law. For the reasons stated below, the Court finds in favor of the Plaintiff.

### I. JURISDICTION

The case is properly before the Court pursuant to 26 U.S.C. § 7426 which provides in pertinent part:

(a) If a levy has been made on property ... any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States ...

(b) The district court shall have jurisdiction to grant only such of the following forms of relief as may be appropriate ...

(2) If the court determines that such property has been wrongfully levied upon, the court may—

(a) order the return of specific property if the United States is in possession of such property;

(b) grant a judgment for the amount of money levied upon ...

26 U.S.C. § 7426(a), (b).

### II. PROCEDURAL HISTORY

The Internal Revenue Service (IRS) asserted a federal tax lien against Plaintiff's property on January 29, 1990, for the unpaid taxes of her father, Maurice Hill. In April, 1990, the Government noticed the property for sale at public auction. The parties agreed by filed Stipulation that the property would not be sold pending the outcome of this litigation.

In addition to a counterclaim against Plaintiff, the Government filed third-party claims against Maurice Hill (the taxpayer) for unpaid withholding taxes, highway use taxes, civil penalties and interest for 1982 through 1987 in connection with his business.[1] The claims against Plaintiff's mother, Lore Hill, were deleted by the Government by means of amended answer. Lore Hill remains in the action only as a nominal party.[2] See Order, filed June 18, 1991 (Pleading No. 19). In 1991, the Government was granted partial summary judgment against Maurice Hill in the amount of $90,928.83, including interest and penalties through May 31, 1991, reflecting his tax liabilities. *Id.* at 4.

### III. FINDINGS OF FACT

On October 3, 1991, the parties filed an Amended Stipulation of Facts and Proposed Issues for Trial. The Court incorporates those stipulated facts as follows:

1. All parties are properly before the Court and the Court has jurisdiction over the parties and the subject matter.

2. All parties have been correctly designated and there is no question of misjoinder or nonjoinder of parties.

3. The property that is the subject of this action consists of approximately 1.85 acres in Henderson County, North Carolina. Defendant's Exhibit A is a true and accurate copy of a deed from J.E. Osteen to the Plaintiff, dated August 14, 1985, that

---

1. The Answer filed by the Government is called "Answer with Counterclaims." Service was effected on Third–Party Defendants who filed a response denominated "Reply." Despite the incorrect title of the pleadings, the parties treated the Government's Answer as containing a counterclaim against Plaintiff and as having joined taxpayer and Lore Hill as Third–Party Defendants. *See* Fed.R.Civ.P. 19 and 20.

2. The Government conceded Lore Hill has no tax liability to the IRS, but could not dismiss her as a party because she could have an interest in the property which is the subject matter of this lawsuit.

conveyed fee simple title to the property to Karen Hill.[3]

4. In 1982, Maurice Hill, who is Karen Hill's father, filed a personal Chapter 11 bankruptcy which was later converted to a Chapter 7 bankruptcy and concluded in 1985. Certain debts to the United States of America, acting by and through the Internal Revenue Service, were not discharged by the bankruptcy. Maurice Hill owes to the Internal Revenue Service the sum of $90,928.83 (which includes interest and penalties through May 31, 1991). As a result of these personal tax liabilities of Maurice Hill, the Internal Revenue Service filed a Notice of Federal Tax Lien under Internal Revenue laws against the property titled to Karen Hill. This was first done on January 29, 1990. The Internal Revenue Service thereafter scheduled a public auction sale for the property for July 31, 1990, in an effort to satisfy the personal tax obligations of Maurice Hill. This lawsuit was filed by Karen Hill in response to those actions by the Internal Revenue Service.

5. Third-Party Defendant, Maurice Hill handled certain aspects of the property purchase. He determined that Osteen owned the property and negotiated the final price with Osteen. He contacted the surveyor and the attorney who did the closing, and attended the closing.

6. On or about July 9, 1987, Maurice Hill and the other Third-Party Defendant, Lore C. Hill, who is Maurice Hill's wife and Karen Hill's mother, toured Geo-Con's facilities in Oregon to look at a model kit home. Defendant's Exhibit C is a true and correct copy of a price quote for the house kit that Maurice Hill received (invoice number 1).

7. In September, 1987, Maurice Hill obtained a certified check in the amount of $4,500 from Clyde Savings & Loan Association and sent it in to Geo-Con as an initial payment for a house kit. Defendant's Exhibit D is a true and correct copy of Clyde Savings & Loan official check number 06026269. Defendant's Exhibit B is a true and correct copy of a Geo-Con invoice

showing a $10,057 price of the kit, a $4,500 down payment, and a $5,567 balance due. Defendant's Exhibit J is a true and correct copy of another invoice that Maurice Hill later requested from Geo-Con (invoice number 1933).

8. On November 2, 1987, Maurice Hill went to Oregon with his brother in order to deliver final payment for and pick up the kit home. Maurice Hill delivered a portion of this balance in the form of a certified check from Clyde Savings & Loan in the amount of $3,000. Defendant's Exhibit E is a true and correct copy of Clyde Savings & Loan official check number 06027265. Defendant's Exhibit B is a true and correct copy of Geo-Con's invoice for the kit (invoice number 1642).

9. Beginning in May, 1986, Maurice Hill generally supervised and participated in the assembly of the kit home.

10. On May 7, 1986, Maurice Hill applied for a general contractor's licensing exemption in order to assemble the house on the property. Defendant's Exhibit F is a true and correct copy of the Application for General Contractor's Licensing Exemption.

11. On May 7, 1986, Maurice Hill applied for a building permit for construction of a house upon the property. Defendant's Exhibit G is a true and correct copy of the building permit and application.

12. On April 28, 1988, Maurice Hill applied for a permit to perform electrical work in the house on the property. Defendant's Exhibit H is a true and correct copy of the electric permit application.

13. On September 9, 1989, the Inspector for Henderson County, North Carolina, issued a Certificate of Occupancy. Defendant's Exhibit I is a true and correct copy of the Certificate of Occupancy.

14. Defendant's Exhibit K is a true and correct copy of a check drawn on the joint account of Maurice Hill and Lore Hill relating to the purchase of a heat unit for a sauna that was at the house.

15. Defendant's Exhibit L is a true and correct copy of a check drawn upon the

---

**3.** Defendant's Exhibit A was admitted at trial as Plaintiff's Exhibit 1.

joint account of Maurice Hill and Lore Hill to pay the Henderson County taxes on the property.

16. Defendant's Exhibit M is a true and correct copy of a check that Lore C. Hill drew on her account to pay property taxes on the property for 1989.

17. Defendant's Exhibit N is a true and correct copy of receipts for payments to Duke Power Company for utilities for the house on the property.

18. Defendant's Exhibits O–Q are true and correct copies of the Plaintiff's Federal income tax returns for 1986, 1987, and 1988.

19. Lore Hill has paid for homeowner's insurance on the property. Defendant's Exhibit R is a true and correct copy of Amended Declarations for the homeowner's insurance on the property for the period from June 22, 1988, to June 22, 1989. Defendant's Exhibit S is a continuation certificate for the homeowner's insurance policy for the property from June 22, 1989, to June 22, 1990.

20. Defendant's Exhibit T is a true and correct copy of telephone bills and payment receipts for the telephone at the house.

21. Defendant's Exhibit U is a true and correct copy of a deed from Thomas W. Hill to Lore C. Hill dated September 18, 1986.

22. Defendant's Exhibit V is a true and correct copy of a deed from Lore C. Hill to Thomas W. Hill dated December 22, 1988.

23. The deposition of Gary Near may be used at trial because the witness is at a distance greater than 100 miles from the place of trial.

24. The deposition of Brad Munson may be used at trial because the witness is at a distance greater than 100 miles from the place of trial.

In addition to the stipulated facts, the Court makes the following additional findings based on the evidence adduced at trial.

25. The property in question borders real estate owned by Maurice Hill's brother, Thomas U. Hill. The property in question is "landlocked" and Plaintiff does not have an easement or right-of-way to the property (which is located near the top of a mountain). In 1986, Plaintiff's mother was granted a right-of-way and access to water for the property from Plaintiff's uncle, Thomas U. Hill. Defendant's Exhibit U. Agent Rosa Shade of the Internal Revenue Service testified on cross examination that the lack of a recorded right-of-way to the property significantly diminished its value on the open market.

26. When the IRS valued the property for purposes of a *de minimis* bid at auction, it failed to take into account the lack of recorded easement or right-of-way providing access to the property.

27. Plaintiff purchased the land with approximately $4,000 cash which had been given to her by her grandfather, a citizen of Germany, during a visit he made here in 1984.

28. Gifts of cash to Plaintiff, her mother, and her siblings from her grandfather were not unusual. After Plaintiff's father embarked on a business venture in the early 1980's, the grandfather refused to make any gifts directly to him.

29. Plaintiff received cash gifts from her grandfather as follows:

a. Her aunt brought Plaintiff approximately $2,000 in cash from her grandfather on her return from a trip to Germany in the fall of 1984.

b. Plaintiff went to Germany in December, 1984, and her grandfather gave her "about" $5,000.

c. In the spring of 1985, her grandfather made his last trip to the United States for her brother's wedding. At this time, he gave her approximately $10,000 over the course of a two month period.

d. Her grandfather sent her approximately $3,000 in cash through a relative returning from Germany in early 1986.

e. Later in 1986, Plaintiff's parents went to Germany for her uncle's fiftieth birthday. Her grandfather sent back approximately $10,000 for her.

f. In 1989, Plaintiff went to Germany and her grandfather gave her $10,000.

In all, Plaintiff's grandfather gave her approximately $44,000 in cash.

30. Plaintiff's parents lost their home in 1985 as a result of her father's bankruptcy.

31. Plaintiff's grandfather gave her the money to build a home so that her parents would have a place to live. Although Plaintiff was transferred to Florida by her employer after construction of the home, she intends to return to this area and live in the home.

32. Agent Shade testified on cross examination that Plaintiff's grandparents provided affidavits which were consistent with Plaintiff's testimony of gifts of cash from her grandfather. The affidavits, although attached to Plaintiff's complaint, were not introduced at trial.

33. Plaintiff never completed Customs Forms 6059B and 4790 which require persons entering the United States carrying currency in excess of $5,000 (until 1986) and in excess of $10,000 (thereafter) to disclose such currency. No evidence was presented concerning whether other family members did or did not fill out such forms.

34. Plaintiff never brought more than the appropriate limit of currency into the country. The Government presented no evidence that Plaintiff or any family member ever transported sums exceeding the amounts specified on U.S. Customs Forms 6059B and 4790.

35. Plaintiff's mother inherited a sum of money from a relative in Germany in 1987 which she used to make a deposit on a house kit. The house was to be built on Karen's land; but, the company went bankrupt, and Mrs. Hill lost her money.

36. Plaintiff kept the money which her grandfather gave her in a safe located in her parents' home. She was afraid to put the money in the bank because she was receiving student loans for college, for which the sums in question would disqualify her. Plaintiff paid her student loans in full.

37. Plaintiff relied on her father to negotiate the purchase price of the land, obtain the survey, and conduct the closing. Plaintiff also relied on her father when she purchased a car.

38. Plaintiff's father actually constructed the home. He had free access to her money in the safe in order to pay for construction materials and related expenses. Plaintiff and her father both testified that the money used to buy the second house kit and complete construction was the money given to Karen by her grandfather.

39. Maurice Hill listed himself as the owner of the property on the application to obtain a general contractor's license and an exemption for purposes of performing electrical wiring in the home. He testified that Vivian Henderson, an employee with the Henderson County Inspection Department, told him this was standard procedure in familial relationships. Ms. Henderson testified to the contrary.

40. Plaintiff moved into the basement of the home in the summer of 1988 along with her mother, father, and two sisters who were home from college for the summer.

41. The certificate of occupancy for the home was not issued until 1989. The certificate lists Maurice Hill as the owner of the property.

42. When the house kit was originally purchased from Geo–Con, Maurice Hill was listed as the purchaser. In late 1989, Maurice Hill asked Gary Near of Geo–Con to issue a duplicate invoice for the sale of the house kit in the name of Karen Hill.

43. In the fall of 1989, Maurice Hill was contacted by the IRS concerning his failure to file tax returns for certain years following his bankruptcy. He testified he filed corporate returns only for those years on the advice of his accountant who advised he had not earned enough personal income to necessitate reporting.[4] After being contacted by the IRS, Maurice Hill filed individual income tax returns. His testimony of lack of personal income was substantiated by Defendant's Exhibit LL,

---

4. The Government argued in its brief that Agent Shade testified Mr. Hill's corporate returns were not filed in a timely manner.

a personal income tax return for 1988 showing a loss to taxpayer. The Government did not offer any other evidence of Maurice Hill's income during the period in question.

44. The Government did not present any evidence that Maurice Hill earned any sums of money during the time period when he worked on Plaintiff's home. Maurice and Lore Hill both testified that Lore Hill supported them until Maurice got a job with Greyhound Bus in 1990.

45. Phillip Hyder is an insurance agent who testified he sold Maurice Hill the insurance policy covering the home. The named insured was originally listed as Lore Hill. In 1991, Hyder learned that Karen might have an interest in the property and he called Maurice to tell him to add her as another insured. Mr. Hyder testified that Maurice later advised him to place the insurance in Karen's name.

46. In addition to filing a lien on Plaintiff's real estate, the IRS seized two trucks which had been titled to Plaintiff's brother and transferred to Plaintiff's mother. IRS Agent Rosa Shade testified that she was not able to verify that another truck seized belonged to the taxpayer, stating that she seized the truck and told him he would have to prove its ownership. The vehicle has been in storage since 1990.

47. The Court finds from the evidence that Plaintiff received the sums of money in question as gifts from her grandfather, that the sums were used to purchase the land and improve it by the construction of the home, and that it was the intention of the Plaintiff to provide a home for her parents after bankruptcy. The Court further finds that Maurice Hill performed the vast majority of the construction work on the home as a gift to Plaintiff, albeit in the knowledge that she intended to allow he and his wife to live there.

## IV. CONCLUSIONS OF LAW

The Court concludes as a matter of law that the conduct of the parties in structuring an arrangement whereby Plaintiff would own a home in which she would allow her parents to live did not create a property interest in Maurice Hill to which the federal tax liens may attach.

### A. Plaintiff has standing to bring the action under 26 U.S.C. § 7426.

■ In order to show standing to bring the suit, Plaintiff must show by a preponderance of the evidence an ownership interest in the property senior to the interest of the IRS. *Morris v. United States*, 813 F.2d 343 (11th Cir.1987). She bears the initial burden of showing "some interest" in the levied-upon property. *Comer Family Equity Trust v. United States*, 732 F.Supp. 755 (E.D.Mich. 1990). Once this showing is made, the burden then shifts to the Government to prove a nexus between the taxpayer and the property. *Morris* at 345.

■ The Plaintiff claims her deed to the property proves outright ownership which is sufficient to establish standing, citing *Newnham v. United States*, 813 F.2d 1384 (9th Cir.1987). The Government argues that Plaintiff is merely a nominee for her father, claiming that the taxpayer actually supplied the purchase price for the property and caused the deed to be placed in her name, citing *Morris, supra.*

It is undisputed by the parties that Plaintiff is the titled owner of the property. Indeed, the Government stipulated that Karen Hill has fee simple title to the property. Nor did the Government dispute at trial that the initial sum paid for the land had been given directly to Karen by her grandfather. The Government's argument concerning nominee status speaks to the second phase of the trial when the Government must show a nexus between the taxpayer and the property. Indeed, the *Morris* case cited by the Government actually stands for the rule that a showing of "title or some other ownership in the property" meets the initial burden of the Plaintiff. *Morris*, 813 F.2d at 345.

Thus, Plaintiff has standing to bring the suit as the titled owner of the property. *Newnham v. United States, supra; Comer, supra.* She has carried the initial burden of showing by a preponderance of the evidence an ownership interest in the property. The burden to show a nexus between the proper-

ty and the taxpayer now shifts to the Government.

## B. The Government met its burden to show a nexus between the taxpayer and the property.

■ A federal tax lien may attach only to the property of the person liable to pay the tax. 26 U.S.C. § 6321; *Pottorf v. United States*, 738 F.Supp. 1365 (D.Kan.1990). A "'wrongful levy' is defined in the regulations as a levy on property in which the taxpayer had no interest at the time the lien arose or thereafter...." 26 C.F.R. § 301.7426–1(b)(iv)(b) (1989). "A levy is wrongful where the property levied upon 'does not, in whole or in part, belong to the taxpayer against whom the levy originated.'" *Pottorf*, 738 F.Supp. at 1368 (quoting *Arth v. United States*, 735 F.2d 1190, 1193 (9th Cir.1984)).

■ The Government must establish this nexus by substantial evidence. *Morris*, 813 F.2d at 345. The "nexus" required has been described as a "connection" between the taxpayer and the third party's property. *Id.* Whether the taxpayer has rights in the property is a factual question. *Pottorf, supra.* State law controls the determination of the nature and extent of the taxpayer's interest in the property. *Comer, supra.* Nonetheless, federal tax law may be used to evaluate the ownership for § 7426 purposes. *Comer, supra; Pottorf, supra.* The Court must therefore assess the evidence to determine if the Government has met this burden.

■ The Government makes several arguments: that Karen is merely the nominee of her father; that the taxpayer has defrauded his creditors by placing the improvements on property deeded to his daughter; and that the evidence shows a clear relationship between the property and the taxpayer. Plaintiff argues that the only evidence presented by the Government is circumstantial and thus insufficient to carry the substantial burden. The Court has concluded the evidence does show a relationship between the property and the taxpayer, but does not show Plain-

tiff is the taxpayer's nominee or that taxpayer defrauded creditors.

To determine whether Karen is the mere nominee of her father, the Court must apply state law. *Comer, supra.* The only case applying North Carolina law cited by the Government is *United States v. Haddock*, 144 F.Supp. 720 (E.D.N.C.1956). In that case, the evidence showed that while incarcerated for failure to pay taxes, the taxpayer and his wife entered into an agreement whereby she would use $7,000 of the taxpayer's money to buy a home in her name. The wife thereafter elected to place the home in her parents' names without the knowledge of the taxpayer. The Government pursued a lien on the property owned by the parents as nominees. The Court found that the taxpayer's money was used for the purchase of the home and that the conveyance "was made with actual intent on the part of Haddock and Mrs. Haddock to defraud" the Government. *Id.* at 725. The court reached this conclusion by applying principles of equity.

It was undisputed in *Haddock* that the source of the funds was the taxpayer. That is not the case at hand. The most that Maurice Hill can be held to have contributed is his own labor. There is no proof of funds coming from him into the property. Therefore, the case provides no guidance to a determination of nominee status.

In *Scott v. Commissioner*, 70 T.C. 71, 1978 WL 3380 (1978), the taxpayer's wife was found to be his transferee because when he sold an undivided life interest in real estate, he arranged to have the proceeds transferred to her. Applying North Carolina law, the court concluded the transfer was a fraudulent conveyance.[5] However, that case again involved a direct transfer of the taxpayer's property.

The Court has found no other North Carolina cases dealing specifically with nominee status. Therefore, following the case law announced in *Comer*, this Court will look to federal law for factors to determine nominee status. *Comer*, 732 F.Supp. at 758. In *United States v. Williams*, 581 F.Supp. 756

---

**5.** Moreover, the case appears to have turned on the court's conclusion the transfer was a fraudu-

lent conveyance, rather than on transferee status.

(N.D.Ga.1982), *aff'd sub nom. United States v. Nelson,* 729 F.2d 1340 (11th Cir.1984), the court found the taxpayer's mother had provided the funds to purchase a home in which the taxpayer and his family subsequently lived. The taxpayer paid the mortgage payments and the mother, although titled in the home, never lived there. However, the court noted the mother's testimony that if the property were to be sold, any proceeds remaining after the mortgage was satisfied would go to her son, the taxpayer, less her initial downpayment. *Id.* at 758. The court concluded from this that the transaction was actually a loan from the mother. Thus, she was the taxpayer's nominee and he was the true owner. In the case at hand, the parents have paid all real estate taxes, utilities and insurance payments in exchange for living on the property. But, as noted above, the Court concluded Plaintiff's money was used to build the house and all parties testified that this is considered Plaintiff's home.

■ Other factors to be considered in determining nominee status are the treatment by the taxpayer of the asset as his own, control over the plaintiff by the taxpayer or a close relationship between them, use of plaintiff's funds to pay personal expenses of the taxpayer, transfer of the property from the taxpayer to the plaintiff for a nominal sum, and the fact that the plaintiff supported the taxpayer. *Comer,* 732 F.Supp. at 755; *Towe Antique Ford Foundation v. IRS,* 791 F.Supp. 1450, 1454 (D.Mont.1992), *aff'd,* 999 F.2d 1387 (9th Cir.1993). There is evidence that Maurice Hill held out the property as his own, evidenced by his applications for a general contractor's license and the electrical exemption. However, the Court finds this evidence equally consistent with the taxpayer's stated purpose to build the home himself. This, of course, provided low cost construction for his daughter.[6] There is no evidence that Maurice Hill controlled his daughter, other than through the normal concern a child would have for a parent. She did not contribute to her parents' living expenses except for allowing them to live in her home.

Additional factors include whether the taxpayer expended personal funds for the property, whether the taxpayer enjoys the benefit of the property, a close family relationship, and whether the record titleholder interfered with the taxpayer's use of the property. *Simpson v. United States,* 89-1 U.S.Tax Cas. para 9285, 1989 WL 73212 (M.D.Fla.1989). The Government showed that Plaintiff's parents paid the real estate taxes, insurance and utilities. In *Morris, supra,* the lack of any identifiable source of income for the plaintiff belied his testimony that he had hoarded up money through the years and led the court to believe that he held the property as nominee for his son, the taxpayer, and true source of the money. The Government here claims the receipts for the house kit show Maurice Hill used his own money for the construction of the home. Nonetheless, the Government offered no proof of income to Maurice Hill during the time in question. Indeed, the Government's only evidence was Exhibit LL showing Mr. Hill's lack of income for 1988. While the Government argued that Mr. Hill must have been failing to report income, no evidence, direct or circumstantial, was offered.

The Court finds the evidence does not establish Plaintiff was the mere nominee of her father. Nonetheless, because of the unique facts shown at trial, the Government has met its substantial burden of showing a nexus between the taxpayer, Maurice Hill, and the property. The burden thus shifts to the Plaintiff to present evidence to sustain her ultimate burden of persuasion. *Simpson, supra* at 16, 1989 WL 73212.

**C. The Plaintiff met her burden of showing the levy is wrongful by showing Maurice Hill has no interest in the property.**

The argument raised by the Government is that the taxpayer may not defraud his creditors by using his funds to place permanent improvements on property belonging to his family members. *Michael v. Moore,* 157 N.C. 462, 73 S.E. 104 (1911); *New Amster-*

---

6. The fact that Mr. Hill falsely listed himself as the owner in order to obtain a general contractor's exemption, a *malum prohibitum,* of course tends to impugn his credibility as a witness, but does not control the finding that Plaintiff owned the land and provided the funds to build it.

*dam Casualty Co. v. Waller,* 301 F.2d 839 (4th Cir.1962). The flaw in the Government's argument is its assumption that the funds used to improve the property came from Maurice Hill, not Plaintiff, while the Court has found otherwise. The fact that the taxpayer presented certified bank checks in his name does not prove the funds used to purchase those checks came from him. The Court accepts the Plaintiff's testimony that the funds for the house came from the cash in the safe and that the cash came from her grandfather.

■■■ The Government further argues that Maurice Hill defrauded creditors by contributing his labor to building Karen's home. In both cases relied on by the Government, the improvements arose from money belonging to the debtor. The Court does not find that a contribution of labor by Plaintiff's father at a time when he was basically unemployed rises to the level of "placing permanent improvements on property belonging to his family members." The fact remains that without the money from Karen, Maurice would have had nothing with which to work. *See also, Haddock,* 144 F.Supp. at 724 (court declined to apply the doctrine of fraudulent conveyance to the case; holding N.C.Gen. Stat. § 39–15 inapplicable and reaching the case instead on "broad and compelling equitable principles").

■■■ The Government's real argument is that taxpayer has a claim for betterments against Plaintiff. A claim for betterments is a claim demanding payment for permanent improvements over and above the value and use of the land, not a claim of title to land. *State v. Taylor,* 322 N.C. 433, 368 S.E.2d 601 (1988). This does not rise to the level of a property interest of the taxpayer in this real estate subject to levy by the Government.

Moreover, since Maurice Hill did not have color of title at the time he rendered the improvements, he does not have a claim for betterments in any event. *Beacon Homes, Inc. v. Holt,* 266 N.C. 467, 146 S.E.2d 434 (1966); *Hackett v. Hackett,* 31 N.C.App. 217, 228 S.E.2d 758, *cert. denied,* 291 N.C. 448, 230 S.E.2d 765 (1976) (holding that where improvements are made by a tenant, there is no color of title and thus no claim for betterments).

■■■ The Government also argues that the taxpayer has an interest in the property by virtue of unjust enrichment. In *Wright v. Wright,* 305 N.C. 345, 289 S.E.2d 347 (1982), the plaintiff-husband sued his wife for unjust enrichment after he used his labor and money to improve their home. The North Carolina Supreme Court there stated:

> Not every enrichment of one by the voluntary act of another is unjust. "Where a person has officiously conferred a benefit upon another, the other is enriched but is not considered to be unjustly enriched. The recipient of a benefit voluntarily bestowed without solicitation or inducement is not liable for their value." This rule is particularly applicable where a husband makes improvements to his wife's land because of the presumption that the improvements constitute a gift.

*Id.* at 350, 289 S.E.2d at 351 (citations omitted). The court went on to state that other ingredients are necessary to invoke the doctrine of unjust enrichment, such as improvements made under the impression of ownership or improvements made without the owner's knowledge. *Id.* at 351, 289 S.E.2d at 351. Moreover, even when the improvements are made under the mistaken belief that the improver has a valid ownership interest, the relief is not an interest in the property but a monetary judgment. *Id.* at n. 5. Thus, the focus of the court in a case involving unjust enrichment is not the intention of the party providing the improvement but the circumstances which would render it unjust for the owner to keep the benefit of the improvements without compensation. *Id.* at 353, 289 S.E.2d at 352.

Applying these principles to this case, the Court finds that even if the taxpayer had a belief that he was the property owner, his relief would be a monetary judgment, not title. However, the evidence shows it was Mr. Hill's intention to build a house for his daughter. While there is no direct evidence, it may clearly be inferred that he knew full well his daughter would let he and his wife live there. Under these circumstances, it was not unjust enrichment of Plaintiff for

him to have provided his labor to the improvements at a time when he was unemployed.

■ The Government does not argue the doctrine of resulting or constructive trust but the issue should be addressed. If the taxpayer could successfully obtain title by virtue of constructive trust, then the Government's lien could attach.

A constructive trust is a duty, or relationship, imposed by courts of equity to prevent the unjust enrichment of the holder of title to, or of an interest in, property which such holder acquired through fraud, breach of duty or some other circumstance making it inequitable for him to retain it against the claim of the beneficiary of the constructive trust.

*Roper v. Edwards,* 323 N.C. 461, 464, 373 S.E.2d 423, 425 (1988) (quoting *Wilson v. Development Co.,* 276 N.C. 198, 211–12, 171 S.E.2d 873, 882 (1970)). It is not necessary that there be an element of fraud to achieve a constructive trust but it is an element which commonly occurs. *Id.*

A trust of this sort does not arise from or depend on any agreement between the parties. It results from the fact that one man's money has been invested in land and the conveyance taken in the name of another.... *The trust is created in order to effectuate what the law presumes to have been the intention of the parties in these circumstances—that the person to whom the land was conveyed hold it as trustee for the person who supplied the purchase money....* The general rule is that the trust is created, if at all, in the same transaction in which the legal title passes, and by virtue of the consideration advanced before or at the time the legal title passes."

*Wright,* 305 N.C. at 352, 289 S.E.2d at 352 (quoting *Mims v. Mims,* 305 N.C. 41, 46, 286 S.E.2d 779, 783–84 (1982)) (citations omitted; emphasis in original). In a case involving a resulting or constructive trust, the focus of the court is on the intention of the party furnishing the improvements. *Id.* 289 S.E.2d at 353. The Court does not find any evidence showing that the taxpayer intended his daughter to transfer the property to him. In

fact, the evidence is to the contrary. The grandfather, having become disenchanted with the son-in-law or, perhaps being merely chary of the latter's financial troubles, declined to make any additional gifts to him. In order to assure his daughter would have a place to live, he gave money to his granddaughter, not his daughter.

In addition, focusing on the consideration advanced before or at the time the legal title passed, the money for the land came to Karen from her grandfather. *Wright,* 305 N.C. at 353, 289 S.E.2d at 353.

■ As in the case of conveyances to a spouse, the presumption arises in a transfer between parent and child that it is intended as a gift, not to impose a resulting trust. *Bowen v. Darden,* 241 N.C. 11, 84 S.E.2d 289 (1954); *see also, Haddock,* 144 F.Supp. at 723. There is no evidence in this case other than that the taxpayer intended to make a gift to his daughter of his labor in building this home. This interpretation is supported by *Casey v. United States,* 62 A.F.T.R.2d 88–5154, 1988 WL 95035 (D.Ind.1988), where the grandfather paid for and built a replica antique car for his grandson. The plaintiff-grandson sued for wrongful levy when the IRS seized the car for sale to satisfy the grandfather's unpaid taxes. The grandson had never driven the car, which had been kept for the most part at his grandfather's home who had also paid for the liability insurance. The parties had worked on the car together although the grandfather contributed the vast majority of the work and money. The parties had always understood that the car was a gift to the grandson. Finding the testimony of the parties credible, the court held in favor of the plaintiff-grandson and ordered the return of the car to the grandson.

Another case with substantially similar facts is *Nelson v. United States,* 821 F.Supp. 1496 (M.D.Ga.1993). Taxpayer purchased 4 acres of land in 1982 and built a house with his own labor and the help of friends. The money for the materials ($15,000) came from his girlfriend. In 1983, taxpayer gave the house to his daughter by quitclaim deed. She moved in and lived there with her minor

son. About one month later, the daughter deeded the property to the girlfriend, as the taxpayer's behest, to repay her $15,000 investment. Since the house was worth about $50,000, the girlfriend was to make monthly payments to the daughter pursuant to a recorded mortgage agreement. All of these conveyances were arranged by the taxpayer and made of record.

The girlfriend never paid the daughter any of the mortgage payments; and about three years later, quitclaimed the property back to the daughter in lieu of foreclosure. The utility accounts for the property were always kept in the taxpayer's name, although the daughter actually paid for both utilities and real property taxes. The taxpayer provided the bulk of maintenance and upkeep for the home. In addition, he actually spent a great deal of time there and had his own bedroom, the largest bedroom in the house. He stored items of personal property there as well.

The court rejected the Government's argument that the daughter failed to present evidence sufficient to convince the court the tax levy should be overturned. Holding that the Government must justify its "extraordinary action in connecting a third party's property to the particular delinquent taxpayer," the court found the daughter was not the mere nominee of the father. The court was convinced that the father intended to provide his daughter with a place to live, and his money, labor, and help were gifts. *Id.* at 1501–02. Likewise, there was not sufficient evidence to show the transfer was done with intent to defraud creditors and no implied trust arose. *Id.,* at 1502–03. There was simply not enough evidence to show that the transaction was not a gift, a presumption implied in law in transfers between a parent and child. *Id.* This Court finds the same analysis applies here.

The Court is not unaware that Plaintiff's testimony about gifts of large sums of cash would be expected to raise cautions about veracity. The decision herein hinges on the determination of credibility of the witnesses in the context of all nontestimonial evidence. Was Plaintiff's ownership of the house (a) part of a "hocus pocus" transaction designed to parlay *taxpayer's* assets into a personal residence and safe haven from IRS claims? Or was it (b) a marshalling of taxpayer's labor and a premature legacy from a grandfather into a dwelling wherein taxpayer lives at the sufferance of Plaintiff? This Court, sitting as the trier of fact, finds the testimony of Plaintiff and her parents to be credible. The lack of any proof by the Government that Maurice Hill had income during the period he built the house is significant. Taxpayer's labor and payments of insurance, taxes, and utilities, amount to rent. Plaintiff, on this showing, has the power to evict taxpayer at any time, without compensation to him. The Plaintiff has carried the burden of persuasion and has convinced this Court by a preponderance of the evidence that the taxpayer has no interest in the property. As a result, the Court finds in favor of the Plaintiff that a wrongful levy has been made and orders the Government to return the property.

The Court also directs an alternative holding. As stated above, it is this Court's finding the taxpayer has no interest in the property. Nonetheless, assuming arguendo that he does have an interest, Plaintiff's interest is a superior interest by virtue of her deed acquired in August, 1985. The Government did not place in evidence at the trial proof of the dates of assessments against the taxpayer. However, the Government's answer indicated assessments were made as early as 1982. The evidence did show that the lien was filed and notice sent to Plaintiff as a nominee in January, 1990. Title 26, United States Code, Section 6323(a) provides that the lien is not valid "as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof . . . has been filed." *United States v. McDermott,* —— U.S. ——, 113 S.Ct. 1526, 123 L.Ed.2d 128 (1993) (quoting 26 U.S.C. § 6323(a)). Pursuant to the provisions of § 6323, Plaintiff qualifies as a purchaser because she acquired, "for adequate and full consideration in money or money's worth, . . . an interest . . . in the property which is valid under local law against subsequent purchasers without actual notice." 26 U.S.C. § 6323(h)(6). Therefore, as to Plaintiff, the federal tax lien is deemed to have

been begun no sooner than the filing of the notice for purposes of determining its priority. *McDermott,* ── U.S. ──, 113 S.Ct. at 1530.

That being the case, I.R.C. Regulation 301.7426–1(b)(1)(iv)(d) states that although a taxpayer may have an interest in property, there are circumstances where the levy as against the Plaintiff is still wrongful. The primary example is when the levy or sale of the property will "effectively destroy or otherwise irreparably injure" a plaintiff's senior interest. *Jefferson Bank & Trust v. United States,* 894 F.2d 1241, 1243 (10th Cir.1990) (quoting I.R.C. Regulation 301.7426–1(b)(iv)(d)). Agent Shade testified at the trial that her preparation of the *de minimis* bid value occurred at a time when she had not even gone into the home and failed to take into account the fact that the property has no recorded easement or right-of-way. Any sale would be subject to the Plaintiff's superior lien. The taxpayer's liabilities approach $100,000. This Court finds it unreasonable to expect bids on landlocked property lacking water rights or a well to approach anything near such a sum. Moreover, Plaintiff's evidence at trial tended to show she would be unable to purchase the property herself at auction. I.R.C. Regulation 301.-7426–1(b)(iv)(d). Thus, even if taxpayer did have an interest in the property, the Government has failed to refute Plaintiff's showing that, on these facts, the levy was nonetheless wrongful.

**D. Is the Plaintiff entitled to an award of attorneys' fees and costs?**

■ Plaintiff has requested an award of litigation costs. Reasonable attorneys' fees and costs are authorized to a party prevailing against the Government in a wrongful suit. 26 U.S.C. § 7430. The party must establish that the position of the Government was not "substantially justified" in order to merit an award. *Casey, supra.* Plaintiff herein has prevailed and thus the issue is whether the position of the Government was substantially justified.

■ Viewing the evidence as a whole, this Court cannot say the IRS had no just cause to assert a nominee lien. This case involves mixed questions of law and fact and the Court's view of the facts was the decisive pivot. *Casey,* 62 A.F.T.R.2d at 88–5157, 1988 WL 95035. The position of the Government that the Plaintiff held title as the taxpayer's nominee was not unsupported by North Carolina law, but was defeated by the application of the facts to the law which, in turn, rested primarily on this Court's determinations of the parties' credibility.

The Court does find troublesome the failure of the IRS to investigate and learn earlier of the landlocked nature of the property, which may have rendered futile any seizure and subsequent sale, and the apparently whimsical seizure of vehicles. Nonetheless, as to the real property in question, it cannot be said that the Government's actions were substantially unjustified.

**V. ORDER**

For the reasons stated *infra,* the Court will grant the relief sought by the Plaintiff and dismiss the third-party claims against Mrs. Hill.

A Judgment incorporating the findings herein will be filed contemporaneously herewith.

*JUDGMENT*

For the reasons stated in the Memorandum of Decision filed contemporaneously herewith,

IT IS ORDERED, ADJUDGED, AND DECREED that the levy imposed by the United States is wrongful and the United States is hereby ORDERED to remove or release its lien from this property as an encumbrance of record in Henderson County, North Carolina;

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Government is permanently enjoined from taking any action to enforce its levy of tax liability against taxpayer, Maurice D. Hill, against this property; and

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the United States have judgment against Maurice D. Hill in the amount of NINETY THOU-

SAND, NINE HUNDRED TWENTY EIGHT DOLLARS AND EIGHTY–THREE CENTS ($90,928.83) as of May 31, 1991, exclusive of interest and penalties accruing thereafter; and

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the third-party claims against Lore C. Hill are hereby DISMISSED; and

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Plaintiff's motion for attorney's fees and costs is hereby DENIED.